**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANGELICA T.D., | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of the Social Security | : | |
| Administration, | : | |
| Defendant | : | NO. 25-6584 |

**<u>MEMORANDUM</u>**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                    April 30, 2026

Angelica T. D. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the

final decision of the Commissioner of the Social Security Administration ("the Commissioner"),

denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") under Titles II and XVI of the Social Security Act.  Plaintiff has filed a brief in support of

her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply.  For

the reasons set forth below, Plaintiff's request for review is denied.

## I.    PROCEDURAL HISTORY[1]

On April 21 and 28, 2023, Plaintiff applied for DIB and SSI, respectively, alleging that her

disability commenced on February 9, 2023.  R. 76.  Plaintiff's claim was denied initially and upon

reconsideration.  *Id.*  Hence, she requested an administrative hearing.  *Id.*  On October 23, 2024,

Plaintiff appeared for a video hearing, before Marc Silverman, Administrative Law Judge ("the

ALJ"); Plaintiff,[2] represented by an attorney, and vocational expert Linda Augins ('the VE")

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), the Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record.  ("R.").

[2] Plaintiff testified at the hearing with the assistance of an interpreter.  R. 96.

testified.  R. 96-116.  On November 8, 2024, the ALJ, using the sequential evaluation process ("SEP") for disability,[3] issued an unfavorable decision.  R. 76-89.  On September 24, 2025, the Social Security Administration's Appeals Council denied Plaintiff's request to reverse the ALJ's decision, making the ALJ's decision the Commissioner's final decision.  *Id.* at 1-4.  Plaintiff presently seeks judicial review of that decision; the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.  FACTUAL BACKGROUND

A.  <u>Personal History</u>

Plaintiff, born on December 17, 1986, last worked in 2023.  R. 78, 86.  She completed high school.  R. 86.

B.  <u>Plaintiff's Testimony</u>

At the October 23, 2024 hearing, Plaintiff testified about her limitations.  R. 101-09.

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. §§ 404.1520(b), 416.020(b).

2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Plaintiff admitted that, after heart and back surgeries in 2017 and 2021, she continued to work. R. 103. However, by 2023, her back pain became intolerable, and she is only able to sit for approximately ten minutes. *Id.* Plaintiff is unable to take prescription pain medication, because she takes prescribed blood pressure medication and blood thinners. *Id.* Plaintiff has received pain injections which have not alleviated her symptoms. R. 108.

Plaintiff estimated that she is able to stand for approximately ten minutes and walk for about a block. R. 104. She is able to maintain activity for approximately eight to ten minutes; thereafter, she requires twenty minutes of rest. R. 105-06. As a result, Plaintiff's sister performs most household chores for her. R. 106.

Plaintiff experiences headaches approximately thrice per week. R. 106-07. She experiences dizziness approximately twice a week. R. 107-08. Plaintiff is unable to sleep through the night; hence, she takes fifteen to twenty minute naps during the day. R. 106. Every time she eats, Plaintiff experiences bloating. R. 107. Finally, Plaintiff estimated that she was able to drive only twenty minutes at a time. R. 108.

C.    Vocational Testimony

The VE testified that Plaintiff's past relevant work as a school bus driver was a semi-skilled,[4] medium[5] job. R. 110-11. The ALJ asked the VE to consider a person of Plaintiff's age, education, work experience, capable of performing light[6] work, with additional limitations: occasionally able to climb ramps and stairs; unable to climb ladders, ropes and scaffolds;

---

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568(b), 416.968(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

occasionally able to crouch, stoop and kneel; unable to crawl; needing to avoid concentrated exposure to extreme cold, vibration and poor ventilation; and limited to moderate noise and simple tasks. R. 111. The VE responded that, although this individual could not perform Plaintiff's past work, they could perform three unskilled[7] jobs: (1) recreation aide, 16,000 positions in the national economy; (2) routing clerk, 43,000 positions in the national economy; and (3) office helper, 12,000 positions in the national economy. R. 111.

The ALJ then asked the VE to consider the same person if restricted to sedentary[8] work. R. 112. The VE opined that this individual could not perform Plaintiff's past work but could perform several alternative, unskilled jobs: (1) charge account clerk, 14,000 positions in the national economy; (2) ticket counter, 17,000 positions in the national economy; (3) escort vehicle driver, 38,000 positions in the national economy; and (4) callout operator, 9,000 positions in the national economy. R. 111-12. Additionally, the VE opined that more than one absence per month on a consistent basis would be work-preclusive. R. 112.

Plaintiff's attorney asked the VE whether a person who required a twenty-minute break every ten minutes could sustain employment. R. 114. The VE opined that such an individual could not. R. 114. Next, the VE opined that, if an individual could only sit for two hours and stand and walk for two hours each day, they could not sustain employment. R. 114. Finally, an individual who needed to walk away from their workstation every ten minutes could not sustain employment. R. 114-15.

---

[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

### III.   THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

1.      [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2028.

2.      [Plaintiff] has not engaged in substantial gainful activity since February 9, 2023 the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3.      [Plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, with the residuals of a microdiscectomy at L5-S1 in March 2021; aortic valvular disease, status post mechanical aortic valve replacement in March 2017; aortic regurgitation; obesity; depressive disorder; and anxiety disorder (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4.      [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can climb ramps and stairs occasionally; can never climb ladders, ropes, and scaffolds; can stoop, crouch, and kneel occasionally; can never crawl; must avoid concentrated exposure to extreme cold and vibration; must avoid concentrated exposure to poor ventilation; is limited to an environment with no more than moderate noise level as defined in the Selected Characteristics of Occupations ("SCO"); and is limited to simple tasks.

6.      [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      [Plaintiff] was born on December 17, 1986 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      [Plaintiff] has at least a high school education   (20 CFR

5

404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [she] has transferable skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers the [she] can perform (20 CFR 404.1567, 404.1569a, 416.969, and 416.969a).

11. [Plaintiff] was not under a disability, as defined in the Social Security Act, from February 9, 2023, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 78-80, 82-83, 86-88.

## IV.    DISCUSSION

A.    Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different

6

conclusion.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  Indeed, the court is not permitted to weigh the record evidence itself.  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.    Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform her past relevant work as a school bus driver, she could perform a limited range of light work.  R. 86-87.  Plaintiff disputes the ALJ's decision, arguing that the ALJ:  (1) improperly evaluated the opinions of her treating physician, Theresa Pazionis, M.D.; (2) improperly evaluated her testimony about her pain; and (3) omitted the frequency and duration of her headaches from the residual functional capacity ("RFC") assessment. Pl. Br. at 8-23. The Commissioner denies Plaintiff's arguments.  Resp. at 1-12.  This court finds that Plaintiff's assertions of error lack merit.

1.   The ALJ Properly Evaluated Dr. Pazionis's Opinion

Plaintiff maintains that the ALJ committed reversible legal error because he ignored Dr. Pazionis's opinion that she "could not maintain employment stemming from the emotional aspect of her pain alone."  Pl. Br. at 10 (citing Tr. 1332, answer to question seven).  This argument lacks merit.

First, Plaintiff misstates Dr. Pazionis's opinion.  Rather than opining that Plaintiff could not work as a result of her pain, Dr. Pazionis opined that physical activity would increase Plaintiff's pain "to such a degree as to require increases in medication for pain or substantial amounts of bed rest."  R. 1332 (answer to question seven).  Plaintiff cannot prevail based upon misreading the record and relying upon an opinion that does not exist.

Second, even if Dr. Pazionis had opined that Plaintiff could not maintain employment due to the emotional aspect of her pain alone, that disability opinion is one the ALJ could have safely ignored, because it concerns an opinion reserved to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 n.2 (3d Cir. 2008).  Indeed, the current regulations explicitly state that an

opinion that a claimant is disabled concerns an issue reserved to the Commissioner and no analysis about such an opinion will be provided, *i.e.*, it will be ignored. 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i). Hence, there is no basis to find the ALJ erred by ignoring the opinion of Dr. Pazionis that Plaintiff posits.

#### 2. The ALJ Committed no Error Concerning Plaintiff's Testimony

Next, Plaintiff argues that, if the ALJ had properly considered her testimony concerning her pain, he would have accepted Dr. Pazionis's opinion that the emotional aspect of her pain was disabling. Pl. Br. at 17. However, as explained in the previous section, Plaintiff misstates her doctor's opinion. Moreover, even if Dr. Pazionis had opined that Plaintiff's pain rendered her disabled, the ALJ was free to ignore that opinion, hence, whether Plaintiff's testimony supports such an opinion is irrelevant to a proper disability determination.

#### 3. The ALJ Properly Evaluated Plaintiff's Headaches

Finally, Plaintiff maintains that the ALJ erred, because he omitted inclusion of the frequency and duration of her headaches in the RFC assessment; Plaintiff contends that Social Security Ruling ("SSR") 19-4p required the ALJ to do so. Pl. Br. at 18-23. Plaintiff is mistaken.

Social Security Ruling 19-4p discusses primary headache disorders, which are a collection of chronic headache illnesses that occur independently and are not caused by another medical condition. SSR 19-4p, 2019 WL 4169635, *3. A primary headache disorder will not be found to be medically determinable based only upon symptom description or mere diagnosis in the record. *Id.* at *6. Instead, a primary headache disorder will only be found to be medically determinable, based upon: (1) diagnosis by an acceptable medical source ("AMI") that is gleaned from the claimant's medical history, physical examination of the claimant and exclusion of other causes for the claimant's headaches; (2) an AMI's observations and description of a typical headache event;

9

(3) remarkable or unremarkable lab test results; or (4) the claimant's response to acceptable treatment. *Id.*

Plaintiff identifies pages 692 and 1376-77 of the administrative record as constituting the record evidence demonstrating that she has a medically determinable primary headache disorder. Pl. Br. at 19. Furthermore, Plaintiff asserts that the ALJ "implicitly found Plaintiff's headaches were a severe impairment." Pl. Br. at 19. Both assertions are incorrect.

Page 692 is the first page of an emergency room note. On that page, the admitting person indicated that Plaintiff was complaining about toe pain, not a headache; the word headache does not appear on that page. R. 692. On the next page, the word "headache" appears as one of many diagnoses in Plaintiff's past medical history. R. 693. That one word cannot satisfy SSR 19-4p's requirements for a medically determinable primary headache disorder. Pages 1376 and 1377 are part of an alphabetical listing of Plaintiff's "Problems" contained in Plaintiff's voluminous medical records. The word headache does not appear on page 1376. However, it does appear on page 1377, albeit without any of the additional information SSR 19-4p requires for a medically determinable primary headache disorder. Hence, the evidence upon which Plaintiff relies fails to demonstrate that her history of headaches would qualify as a primary headache disorder under SSR 19-4p.

Furthermore, the ALJ did not find that Plaintiff's headaches were medically determinable, nor did he find that her headaches constituted a severe impairment. *See* R. 79-80. Based on the meager evidence Plaintiff cites, these conclusions were correct. That is, the evidence Plaintiff relies upon would not permit the ALJ to find that she has a medically determinable primary headache disorder. Despite the absence of the requisite evidence, the ALJ acknowledged that Plaintiff had testified about her headaches and, in order to accommodate her testimony, he limited

10

her RFC to low noise and simple tasks.  R. 85.  Since the ALJ did not find, and could not have found, that Plaintiff had a medically determinable primary headache disorder, there is no basis to find that the ALJ misapplied SSR 19-4p when he provided some accommodation for Plaintiff's non-severe headaches.

Implementing and judgment orders follow.